JOHN R. RENNER

*v.*

MICHAEL KANNALLY.

*Opinion filed December 18, 1901.*

JUDGMENTS AND DECREES—*when decree may be impeached for fraud.* If the purchaser of land employs a lawyer, with the grantor's consent and to be at his expense, to quiet title, but the lawyer in his bill also prays for a cancellation of the notes and mortgage held by the grantor for the unpaid purchase money and an additional sum loaned by the grantor, and induces the grantor to enter his appearance believing the only object of the bill to be to quiet title, a court of equity has power to set aside that part of the decree canceling such notes and mortgage upon a bill filed by the grantor to impeach the decree for fraud.

*Renner* v. *Kannally*, 96 Ill. App. 392, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Whiteside county; the Hon. W. H. GEST, Judge, presiding.

WHITE & SHELDON, for appellant.

A. A. WOLFERSPERGER, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in equity filed in the circuit court of Whiteside county by appellee, against appellant, to impeach a decree for fraud. A demurrer was sustained thereto and a decree entered dismissing the bill. An appeal was perfected to the Appellate Court for the Second District, where the decree was reversed and the cause remanded. (*Kannally* v. *Renner*, 84 Ill. App. 51.) The case having been re-instated in the circuit court and an answer filed thereto, the appellant filed a cross-bill. The case was referred to the master, and upon final hearing a decree was entered dismissing the cross-bill and granting the relief prayed for in the original bill, which decree has been affirmed by the Appellate Court and a further appeal has been prosecuted to this court.

The pleadings, master's report and evidence show that one John Courtney formerly owned certain lands in Whiteside county; that on August 3, 1878, his interest in said lands was sold upon execution and a certificate of purchase issued to one George H. Fay; that the appellee purchased the said certificate from Fay; that the title of Courtney in said lands became barred by his failing to redeem within the time prescribed by law; that appellee attempted to take out a sheriff's deed, but by mistake, instead thereof, a certificate of redemption was issued to him; that, supposing he was the owner of the premises, on March 1, 1880, he sold and conveyed the same by warranty deed, for the consideration of $1200, to appellant, who immediately took possession thereof, the same being wild land, and commenced to improve the same, and has remained in the undisturbed possession thereof ever since; that appellee received from appellant $400 in cash, and notes secured by mortgage for the balance of the purchase money of said land; that in the fall of 1885, the appellant having paid said notes, with the exception

of $400, and desiring to make a new loan upon the premises, it was discovered that a certificate of redemption, instead of a deed, had been made to appellee and that the title was defective; that appellee then loaned to appellant $200 in addition to the $400 remaining due, and released the mortgage and took new notes and a new mortgage upon the premises for the sum of $600, and agreed with appellant that a lawyer should be hired and such proceedings had in court as might be necessary to perfect in appellant the title to the premises, the appellee agreeing to pay the expenses of such proceeding, including lawyer's fees; that thereupon appellant employed C. L. Sheldon, who on the 22d day of March, 1892, commenced a suit in the circuit court of Whiteside county in behalf of John R. Renner, the appellant, against Michael Kannally, the appellee, and the unknown heirs of John Courtney, deceased, to perfect such title, and also to cancel the notes and mortgage given by appellant to appellee to secure the payment of said $600. Appellant admits that before he began the proceedings appellee told him to hire a lawyer and get the title perfected and he would pay the expenses. After the bill had been filed, appellee, at the instance of Sheldon, entered his appearance and was called as a witness in the case and testified in relation to Courtney's connection with the title, which testimony, together with all the testimony taken in the case, was taken at the office of and was written down by Sheldon, who also prepared the special master's report in the case. Appellee understood, as the evidence shows he had a right to, that Sheldon was hired pursuant to the direction given by him to appellant, and he was never notified to the contrary. A decree was entered in that case quieting the title to said premises in appellant and canceling the notes and directing the appellee to release the mortgage of record. Without any request to appellee to release the mortgage, the master in chancery, acting under the authority contained in the decree, released and

discharged the same of record. Appellee testified that he went to see Sheldon and told him he would be responsible to him for his pay for filing said bill, and that after the suit was ended he called upon Sheldon for his bill and the latter informed him appellant had paid him. Some time thereafter, appellant having failed to pay the $600 and interest secured by the last mortgage, the appellee called upon Sheldon with a view to have him foreclose the same. He did not inform appellee at that time that the notes and mortgage had been canceled and released of record, but stated to him that he was the appellant's attorney and could not represent him. Appellee then employed a solicitor, and on July 31, 1895, filed a bill to foreclose the mortgage, when appellant filed a plea averring the cancellation of the notes and mortgage by virtue of the decree, as a defense to the foreclosure suit, which suit is now pending. Appellee testifies that upon the filing of said plea he for the first time learned that the notes and mortgage had been canceled and released of record. This bill was filed on April 29, 1896.

We think it clearly appears from this record that a fraud was perpetrated upon the appellee by the appellant in causing that portion of the former decree canceling the mortgage indebtedness to be entered against him without his knowledge or consent. It is said, by way of argument, that it clearly appears that at the time the appellee sold the premises to the appellant the appellee had no title thereto. This is true. It further appears, however, that at the time the bill was filed to quiet title the appellant relied upon the warranty deed made to him by appellee, the possession obtained under such deed and the payment of taxes for seven years, as title, and that the court entered a decree quieting the title to said premises, as against the heirs of John Courtney, deceased, in appellant, by reason of the proof of such facts; also, that he has remained in possession of such premises, undisturbed, since the same were delivered to him by appellee,

and that the appellant knew the condition of the title to the lands at the time the purchase money mortgage was released and the new mortgage taken for $600, which included an additional loan of $200. The question here, however, is not whether appellee had title to the premises at the time he made the deed for the same to the appellant, but whether it is a fraud upon the appellee for Sheldon, at the instance of appellant, without the knowledge or consent of appellee, to incorporate in the bill a prayer for relief against appellee, and to have entered a decree canceling appellee's mortgage, when appellant had engaged Sheldon, at the instance of appellee, with the understanding between appellant and appellee that appellee was to pay the expenses of said suit, including lawyer's fees.

That a court of chancery has the right to set aside so much of said decree as canceled and released the notes and mortgage of appellee is too clear for argument. To hold otherwise would be to hold that appellant might reap the full benefit of the conveyance made to him by appellee, which has now ripened into a title, and at the same time avoid paying, not only a part of the purchase price of the land, but the money borrowed from appellee after he knew the condition of said title, by having a decree entered in his favor, against appellee, canceling such indebtedness, and the mortgage securing the same, without notice to appellee, in a case in which appellee had entered his appearance and in which he had voluntarily appeared and testified, fully believing that the only object thereof was to perfect the title to the premises in appellant, and which would leave his mortgage in full force and effect and a first-lien thereon.

We are of the opinion the circuit court did not err in granting the relief prayed for in the original bill. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*